UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOCELYN GEORGES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 03-12553-REK |
| PARTNERS HEALTHCARE | ) |
| SYSTEM, INC., a/k/a | ) |
| MASSACHUSETTS GENERAL | ) |
| HOSPITAL, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

This is a claim for employment discrimination on the basis of race. The Complaint alleges Plaintiff was terminated from his job as a patient transporter at The General Hospital Corporation, d/b/a Massachusetts General Hospital ("the Hospital"), not because of his failure to cure his attendance problems, but because the Hospital "treated Caucasians differently than it did African-Americans." Complaint, at para. 4. Because discovery has produced no competent evidence in support of this claim, the Hospital is entitled to summary judgment in its favor as a matter of law.

### Summary of Material Facts[1]

Plaintiff is a Haitian black man who worked for the Hospital as a patient transporter for approximately four years. Facts 1. He was terminated in September, 2002 for failure to comply with his Department's attendance requirements. Facts 2. Three

---

[1] The Hospital has submitted herewith and incorporates herein by reference its L.R.D. Mass. 56.1 Statement of Undisputed Facts as to which there is no genuine issue to be tried ("Facts"). The Hospital respectfully highlights below those Facts most material to the issues before the Court.

Hospital officials participated in the decision to terminate Plaintiff: Alfonso (Bruno) Viscomi, Manager of Patient Transport, Equipment and Materials Services ("Viscomi"); Krzysztof Klincewicz, Supervisor of Materials Management, Patient Transport Branch ("Klincewicz"); and Anne Morin, Human Resources Generalist ("Morin"). Facts 3. Plaintiff grieved his termination through an independent Hospital process, and the termination was upheld by that process. Facts 4.

Plaintiff's position was not filled by a particular individual hire. Staffing for Patient Transport as a whole is a 24-hour operation, and employee hours are added, subtracted or transferred from shift to shift depending upon changing Hospital volume and need. The first person hired in the Patient Transport department following plaintiff's termination was an Asian/Pacific Islander. Also hired as transporters prior to the end of 2002 were two blacks and three hispanics. Facts 5. Plaintiff has not identified any black transporter other than himself, who he believes was treated less favorably by the Hospital than white employees. Facts 6.

Prior to being terminated, Plaintiff received both oral and written progressive discipline (a/k/a "corrective action") from his Supervisor Klincewicz -- as well as Klincewicz's predecessor, McHurley Louis, who is black -- for his attendance problems in 2001 and 2002, consistent with Hospital practice with respect to unscheduled absences. Also consistent with practice, Klincewicz consulted with Human Resources at the Hospital before issuing the Written Warning and Final Written Warning to Plaintiff. Facts 7-11.

Plaintiff believed the progressive discipline he was receiving for his attendance was wrong and unfair. Despite the Guidelines of his Department, Plaintiff believed if he called in before his shift began to tell his supervisor he would not show up for work, his absence was excused, and it would not be counted against him for purposes of discipline. Plaintiff expressed this mistaken belief about attendance policy numerous times to his supervisors in the course of progressive discipline. Despite their attempts to instruct him properly in the attendance Guidelines, Plaintiff refused to accept the meaning of the Guidelines and refused to accept his written warnings. Facts 12-14.

Hospital officials ultimately concluded corrective action was failing in Plaintiff's case, because he was not correcting his attendance behavior despite the written warnings issued to him. When Plaintiff was finally terminated for his poor attendance, he blamed Viscomi, believing Viscomi made the decision because Plaintiff is black. Plaintiff believed it was not Klincewicz's fault, rather "Bruno push him" to terminate Plaintiff." Facts 15-16.

The Department's attendance Guidelines provide for supervisor discretion as to which unscheduled attendance incidents are charged against an employee, that is, which absences or tardiness will "count" for purposes of progressive discipline. For example, absences caused by a later-documented medical condition may be excused. Employees experiencing other problems interfering with their attendance are encouraged to consult with their supervisors, Human Resources, or the Employee Assistance Program for guidance. The Guidelines and Hospital practice encourage a case-by-case assessment of an attendance problem, and do not limit attendance analysis to a "numbers game." Facts 21-22.

Klincewicz routinely took into consideration special occasions such as sickness or child care problems in deciding how to treat unscheduled absences of employees. He had the discretion under the Guidelines to re-issue a particular corrective action step rather than moving to the next serious step. The Hospital decision makers analyze each attendance problem individually, and do not compare employee records. Facts 22-23.

Viscomi was hired by the Hospital as Manager of Patient Transport in July, 2000. Klincewicz met with Viscomi in weekly supervisor meetings in 2001-2002, where improving Department attendance was a frequent agenda item. Facts 24-25

In 2001-2002 at the time of Plaintiff's discipline and termination, the Transport Department employed approximately one hundred eight (108) patient transporters. Of these 108 transporters, sixteen (16) were white, fifty-six (56) were black, thirty-four (34) were hispanic, and two (2) were Asian-Pacific Islander. Of these 108 transporter employees, sixty-eight (68) were hired between the time Viscomi became Manager and the end of 2002. Of these 68 transporters hired on Viscomi's watch, thirty-two (32) were black. Facts 26-27.

Of the 108 total transport employees, fourteen (14) were terminated for attendance issues between July 2000 and December 2002. Of the 14 employees terminated for attendance issues during this period, four (4) were white, three (3) were Hispanic, and seven (7) were black. Facts 28.

Five additional white transporters experienced attendance problems during 2000-2002, but were not terminated, for reasons within Klincewicz's discretion having nothing to do with race. The Department conducted no analysis of attendance discipline based on race; no comparison was made of any one employee's attendance record with any other

4

employee's attendance record. The Hospital relied on the case-by-case consultation process, and the Guidelines, to ensure consistent application of attendance discipline in the Department. None of the three Hospital officials who agreed on the appropriateness of Plaintiff's termination has ever been accused of racial discrimination by any other Hospital employee. Facts 30-33.

## Argument

Once the Hospital has submitted a properly supported motion for summary judgment, the Plaintiff "may not rest upon mere allegations . . . but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A genuine issue for these purposes is more than a "metaphysical doubt." Matsushita Elect. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). An issue is only genuine if "the evidence is such that a reasonable jury could return a verdict for" Plaintiff. Id. An issue is only material if it "has the capacity to sway the outcome of the litigation under the applicable law." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). In an employment discrimination case the standard compels summary judgment for the employer if the employee "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano De La Cruz v. El Conquistador Resort & Country Club, 218 F. 3d 1, 5 (1st Cir. 2000). Hearsay evidence inadmissible at trial cannot be considered on a motion for summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

When, as here, Plaintiff presents no direct evidence of race discrimination, he must proceed under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) burden-shifting analysis. Straughn v. Delta Air Lines, Inc, 250 F.3d 23, 33 (1st Cir.

5

2001). Plaintiff bears the initial burden of establishing a prima facie case of race discrimination, in this case: that he is within a protected class; that he was qualified for and adequately performing his job; that the Hospital took an adverse employment action against him; and that his position remained open or was filled by someone outside his protected class. Straughn, 250 F.3d at 33.

If Plaintiff is able to meet this standard, the Hospital must introduce evidence of a legitimate business reason for the employment action. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002). At that point, any presumption of discrimination vanishes, and Plaintiff must meet his ultimate burden of establishing that he was "treated differently because of his [race]," that is, Plaintiff must produce sufficient evidence that the Hospital's articulated reason for his termination is not the real reason, but merely a pretext for discrimination. Otherwise, there is no genuine issue of material fact to submit to a jury. Id. "[U]ltimately, the question is one of the sufficiency of Plaintiff's evidence," id. at 45, and on this record Plaintiff's claim must fail.

I.  Plaintiff Cannot Prove a Prima Facie Case of Race Discrimination.

Plaintiff's Complaint claims he is African-American, and that the Hospital treated Caucasians differently with respect to attendance than it treated African-Americans. Complaint, para. 4. First, discovery revealed Plaintiff is not African-American, but rather a Haitian immigrant who came to the United States in 1986, and became a citizen in approximately 2001. Facts 17. Second, the Hospital does not maintain employment records based on national origin. Because this is a race claim, and Plaintiff's discovery sought employee information based on "color" and "race," this

Motion and supporting pleadings proceed on the assumption Plaintiff is claiming discrimination because of his race (non-caucasian, non-hispanic) and color (black).

During the time period of Plaintiff's discipline and termination, fully half of the Hospital's transport employees were black. Caucasian employees made up fifteen percent (15%) of this work force; the remainder of the transporters were hispanic (31%) and Asian-Pacific Islander (2%). Facts 26. Significantly, Plaintiff has not identified any black transporter other than himself who he believes was treated less favorably than the caucasian transporters. Facts 6. Also significantly, although Plaintiff was not replaced by a particular hire when he was terminated, none of the four transporters hired during the quarter following Plaintiff's termination was caucasian. Facts 5.

Moreover, Plaintiff cannot prove he was performing his job satisfactorily for purposes of his prima facie case. To the Hospital, attendance was an important part of every employee's job, and departments were free to establish their own attendance guidelines. Facts 8. Plaintiff's department did so, and Plaintiff continued to fail to accept his Department's requirements with respect to unscheduled absences. Facts 9-11. Plaintiff so failed despite repeated attempts by his Supervisor, Klincewicz, and his Manager, Viscomi, to explain those requirements to him and to correct his behavior. Facts 13-15. It is obvious, and well established in the law, that regular attendance on the job constitutes an essential requirement for employment. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 650 (1st Cir. 2000)(in the context of ADA claim, employee's absence from work with no indication of return relevant to employer's reasonable evaluation of a leave request); Leary v. Dalton, 58 F.3d 748, 753 (1st Cir. 1995)(essential function of employment was showing up for work as scheduled). For all

of these reasons, a jury could not reasonably find Plaintiff has proven a prima facie case for race discrimination in employment, and the Hospital is entitled to judgment in its favor on that basis alone.

II.     There is No Competent Evidence of Race Discrimination.

Even assuming without conceding that Plaintiff can meet his first burden to prove a prima facie case, the Hospital has more than met its burden to proffer competent evidence of a legitimate business reason for terminating Plaintiff's employment. The Department Guidelines published in September, 1998 quite clearly inform Materials Management employees of the Department's practice with respect to unscheduled absences. Facts 9. Plaintiff does not dispute he was absent or tardy on the dates in question. Nor does he dispute the accuracy of the Written Warning and the Final Written Warning. These documents stand as uncontroverted evidence before the Court. They are reasonable on their face, and well within the Supervisor's discretion as supported by Hospital practice and the Department Guidelines. Facts 7, 10-11.

Plaintiff's claim is that the attendance Guidelines were not what they say they are -- or perhaps should not have been what they say they are. Facts 12. This is insufficient as a matter of law to rebut the Hospital's evidence. Plaintiff cannot mount a legal challenge to the warnings simply because he disagrees with them; he cannot present a jury question merely by contradicting the underlying employment record facts. Feliciano, 218 F.3d at 8 (Title VII was not designed to transform courts into super personnel departments; the Court is not required to assess the merits – or even the rationality -- of employers' nondiscriminatory personnel decisions); Hoeppner v.

Crotched Mountain Rehabilitation Ctr., Inc., 31 F.3d 9, 17-18 (1st Cir. 1994)(evidence contesting factual underpinnings insufficient to present jury question).

Any misunderstanding by Plaintiff of absentee call-in practice is irrelevant. What matters for purposes of discrimination analysis is the "perception of the decision maker," that is, the basis for Viscomi's and Klincewicz's decision, and what they reasonably believed occurred. Straughn, 250 F.3d at 41. "The question is not whether [Plaintiff] was actually performing below expectations, but whether [the employer] believed that [ ]he was." Feliciano, 218 F.3d at 7. Likewise, a claim by Plaintiff that the termination was somehow unfair, because he does not accept the call-in rules, is not sufficient to state a claim under Title VII. Id., 218 F.3d at 8. Title VII is not "a license for insubordination at the workplace." Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 262 (1st Cir. 2001); Feliciano, 218 F.3d at 8 (unfairness insufficient to state Title VII claim).

III.   The Termination for Attendance Was Bona Fide; There is No Evidence of Pretext.

To avoid summary judgment on these facts, Plaintiff was required to produce evidence from which a reasonable jury could infer that the Hospital's documented reason for terminating him was merely a pretext for race discrimination. Plaintiff bases his belief of pretext on two allegations: 1) that he was told in his Hospital orientation before working in the Transport Department that unscheduled absences could be excused with a call in to the supervisor; and 2) that certain white transporters with attendance records worse than his were not terminated. Facts 12, 16. Plaintiff ascribes the illegal racial animus to his Manager, Viscomi. Facts 16. Plaintiff's beliefs, however genuine, are not supported by either the record evidence before the Court or the law.

9

First, neither Viscomi nor Klincewicz acted alone in the written warnings or the termination; they consulted one another and they consulted Human Resources. Facts 11, 18-20. Viscomi and Kincewicz each met with Plaintiff over the course of the discipline, and each independently ascertained that Plaintiff did not understand and/or would not accept the consequences of his actions. Facts 13-15. The bona fides of their conclusions about this are corroborated by Plaintiff's own deposition testimony in this case. Facts 12.

Plaintiff's apparent fear that Viscomi did not accept his call-ins as excused absences because he is black is simply that – a subjective speculation entirely unsupported by the facts. Straughn, 250 F.3d at 37(plaintiff failed to sustain evidentiary burden that she was singled out for criticism or assignments); Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 871 (1st Cir. 1997)("[p]laintiff's perception is not evidence, insufficient admissible material to support summary judgment"); Lewis v. Gillette Co., 22 F.3d 22 (1st Cir. 1984)(without evidence in support of plaintiff's personal belief, summary judgment for employer affirmed). Plaintiff must produce admissible facts, not his own speculation or conclusions, that would enable a jury to find that the consistent practice employed by the Hospital with respect to unscheduled absences was merely a pretext to conceal discrimination against one black employee.[2]

Moreover, the circumstantial evidence of these Hospital officials' practices during the material timeframe precludes a finding of racial prejudice. A total of fourteen (14) employees were terminated for attendance issues between July, 2000 (when Viscomi

---

[2] See, e.g., Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir. 1996)(plaintiff must produce "more than steamy rhetoric and bare conclusions. ... [H]e must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.); King v. Town of Hanover, 116 F.3d 965 (1st Cir. 1997)(ruling that affidavits and depositions of witnesses challenging disciplinary action did not preclude summary judgment).

became Manager) and December, 2002 (the quarter in which Plaintiff was terminated). Of these fourteen, three were white, four were hispanic, and seven were black. These termination statistics are entirely consistent with the representation of these three groups in the transporter population. Facts 26-28. McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals, 140 F.3d 288, 303 (1st cir. 1998)(statistical evidence permissible on issue of disparate treatment to show general pattern of employer's conduct).

This is particularly significant in light of the undisputed evidence that the Hospital's implementation of the Guidelines was color blind and intentionally non-comparative. Each employee attendance record was evaluated on a case-by-case basis; no decision maker compared the record of one employee to another. Instead, an effort was made to exercise discretion consistent with the Guidelines and fairly with respect to each employee. The law requires no more – and no less.[3]

Plaintiff has thus failed in his burden to prove pretext by "evidence ... of such strength and quality as to permit a reasonable finding that the ... [termination] was obviously or manifestly unsupported." Estades-Negroni v. The Associates Corporation of North America, __ F.3d __, 2003 WL 22244952, *4 (1st Cir. 2003); McMillan, 104 F.3d at 310 ("hard work and good relationships insufficient evidence to refute employer's showing of legitimate business reasons ").

---

[3] The five white transporters Plaintiff believes should also have been terminated were not in fact similarly situated to him. Facts 29-31. Some had documented medical problems. Some improved their attendance. Unlike Plaintiff, none denied the existence or validity of the Guidelines requirements, thereby preventing "corrective action" from correcting their behavior. Straughn, 250 F.3d at 43-44 (comparators must be similarly situated in all relevant respects); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)(for purposes of comparison in discrimination law, cases must be fair congeners; "apples should be compared to apples").

Conclusion

For all of the reasons discussed herein, there is no genuine dispute of fact material to Plaintiff's race discrimination claim, and judgment should enter for the Hospital.

PARTNERS HEATHCARE SYSTEM, INC.,
THE GENERAL HOSPITAL CORPORATION, d/b/a
MASSACHUSETTS GENERAL HOSPITAL
By their attorneys,

_____
Christine M. Roach – BBO No. 421630
ROACH & CARPENTER, P.C.
24 School Street
Boston, MA 02108
(617) 720-1800

DATED: November 12, 2004

### CERTIFICATE OF SERVICE

I, Christine M. Roach, hereby certify that I have served the above pleading on the opposing party by this day hand delivering a copy of same to counsel of record.

DATED: November 12, 2004