UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOCELYN GEORGES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 03-12553-REK |
| ) | |
| PARTNERS HEALTHCARE ) | |
| SYSTEM, INC., a/k/a ) | |
| MASSACHUSETTS GENERAL ) | |
| HOSPITAL, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' L.R.D.MASS. 56.1 STATEMENT OF UNDISPUTED FACTS

Defendants Partners HealthCare System, Inc. ("Partners") and The General Hospital Corporation, d/b/a Massachusetts General Hospital ('the Hospital"), hereby submit, pursuant to L.R.D.Mass. 56.1, the following statement of material facts of record as to which there is no genuine issue to be tried:

### Plaintiff's Employment with the Hospital

1. Plaintiff began working at the Hospital in or about June, 1997. Plaintiff transferred into the Patient Transport department in October, 1998. Hospital's Responses to Plaintiff's First Set of Interrogatories, Exhibit A hereto, at Response 2.

2. Plaintiff was terminated from the Hospital for poor attendance on September 24, 2002. Termination Letter, Exhibit B hereto.

3. Three Hospital officials participated in the decision to terminate Plaintiff: Alfonso (Bruno) Viscomi, Manager of Patient Transport, Equipment and Materials Services ("Viscomi"); Krzysztof Klincewicz, Supervisor of Materials Management, Patient Transport Branch ("Klincewicz"); and Anne Morin, Human Resources Generalist

("Morin"). Klincewicz Deposition, Exhibit C hereto at pages 69-71; Viscomi Deposition, Exhibit D hereto, at pages 50-53; Morin Deposition, Exhibit E hereto, at pages 40-49.

4. Plaintiff grieved his termination through an independent Hospital process, and the termination was upheld by that process. Grievance Decision Letter, Exhibit F hereto; Viscomi at 72-73.

5. Plaintiff was not replaced, per se, by a particular individual hire. Staffing for Patient Transport as a whole is a 24-hour operation, and employee hours are added, subtracted or transferred from shift to shift depending upon changing Hospital volume and need. The first person hired in the Patient Transport department following plaintiff's termination was an Asian/Pacific Islander. Also hired as transporters prior to the end of 2002 were two blacks and three hispanics. Exhibit A at Response 7.

6. Plaintiff has not identified any transporter employee of color, other than himself, who he believes was treated less favorably by the Hospital than white employees. Plaintiff Jocelyn Georges' Answers To Interrogatories, Exhibit G hereto, at Answer 7.

Plaintiff's Progressive Discipline for Attendance Problems

7. Prior to being terminated, Plaintiff received both oral and written progressive discipline (a/k/a "corrective action") from his Supervisor Klincewicz for his attendance problems in 2001 and 2002, pursuant to Hospital policy and practice with respect to unscheduled absences. Written Warning, Exhibit H hereto; Final Written Warning, Exhibit I hereto.

8. The Hospital's general policy on attendance is that attendance is

2

important, and that problem attendance may be addressed through the corrective action process. Each department is encouraged to create its own attendance guidelines. Morin at 11-12; 17-19.

9. Written Department Guidelines applicable in 2001 and 2002 (and first distributed to all Materials Management employees in September, 1998) provided that a "written warning may occur with 6-8 absences (+2-3 absences)" and that a "written warning may occur with 6-12 times late (+2-3 lates)." The Guidelines also provided that "final written warning may occur with 7-9 absences (+2-3 absences)" and "final written warning may occur with 7-13 times late (+2-3 lates)." The timeframes in the Guidelines encompass a rolling year. ATTENDANCE GUIDELINES, Materials Management, September 1, 1998 ("Guidelines"), Exhibit J hereto, at pages 1-2; Klincewicz, at pages 40-45; Viscomi at pages 24-28.

10. Prior to issuing the Written Warning and Final Written Warning to Plaintiff, Klincewicz or his predecessor supervisor (McHurley Louis, who is black) conducted the counselings and oral warnings to Plaintiff recommended by the Guidelines. Klincewicz at pages 45-54; Viscomi at pages 9-12; Performance Tracking Sheet and Daily Attendance Records 2001 and 2002, Exhibit K hereto.

11. Prior to issuing the Written Warning and Final Written Warning to Plaintiff, Klincewicz consulted with Human Resources. Klincewicz at pages 27-30; 58-68; Morin at pages 28-31.

Plaintiff's Response to Progressive Discipline

12. Plaintiff believed the progressive discipline he was receiving for his attendance was wrong and unfair. Despite the Guidelines of his Department, Plaintiff

3

believed if he called in before his shift began to tell his supervisor he would not show up for work, his absence was excused, and it would not be counted against him for purposes of discipline. Plaintiff believed this because he said he had been told so in his Hospital orientation before he came to work in Patient Transport. Deposition of Plaintiff Jocelyn Georges ("Georges"), Exhibit L hereto, at pages 35-49, 89-92, 97-98, 110; Viscomi at 38-39.

13. Plaintiff expressed this mistaken belief about attendance policy numerous times to his supervisors in the course of progressive discipline. Despite their attempts to instruct him properly in attendance policy, Plaintiff refused to accept the policy and refused to accept his written warnings. Exhibits H & I; Klincewicz at pages 54-59; Viscomi at pages 45-46; Georges at 133-42.

14. Klincewicz made numerous efforts to discuss this misperception with Plaintiff. Plaintiff never backed up any of his call-in claims of illness with medical records. Klincewicz at pages 58-59, 93-95.

15. Hospital officials ultimately concluded corrective action was failing in Plaintiff's case, because he was not correcting his attendance behavior despite the written warnings issued to him. Klinciwicz at pages 69-76; Viscomi at pages 38-39.

16. When Plaintiff was finally terminated for his poor attendance, he blamed Viscomi, believing Viscomi made the decision because Plaintiff is black. Plaintiff believed it was not Klincewicz' fault, rather "Bruno push him" to terminate Plaintiff. Georges at pages 48-49, 95-98, 124-26, 170-71.

Plaintiff's Race Claim/Hospital Decisionmaking

17. Plaintiff is not African-American, he is Haitian. Georges at pages 8-9.

4

18. It was not Viscomi's idea to terminate Plaintiff, and Viscomi did not make the decision alone. Klincewicz told Viscomi Plaintiff had sustained sufficient attendance problems to be terminated. At Viscomi's request, Klincewicz consulted Morin about the best course to pursue with Plaintiff – both with respect to the Final Written Warning and the possible termination. All three officials ultimately concurred in the decision to terminate Plaintiff. Viscomi at pages 38-39, 51-53; Klincewicz at pages 64-77, 107-109.

19. As in the case of each employee advancing through progressive discipline towards termination, Morin and Klincewicz together evaluated Plaintiff's attendance record with respect to unscheduled absences, and compared his record to the Guidelines. Morin and Klincewicz considered whether any mitigating circumstances would lead them to exercise the discretion accorded by the Guidelines at each step -- to re-issue a particular corrective action -- instead of moving to the next step. At both the Final Written Warning and the termination stage, Klincewicz and Morin concluded the next step was appropriate. Morin at pages 36-40; Klincewiz at pages 64-76; Viscomi at pages 12-14, 33-42.

20. Consistent with his usual practice, Viscomi did not personally examine the documentation with respect to Plaintiff's attendance record. Instead, Viscomi relied on his supervisors, in this case Klincewicz, to administer attendance records and policy in accordance with the Guidelines and Human Resources consultation. Viscomi at pages 12-14; 33-38; 44-48, 50-58.

21. The Guidelines provide for supervisor discretion as to which unscheduled attendance incidents will be charged against the employee, that is, which absences or

tardiness would "count" for purposes of progressive discipline. For example, absences caused by a later-documented medical condition may be excused. Employees experiencing other problems interfering with their attendance were encouraged to consult with their supervisors, Human Resources, or the Employee Assistance Program for guidance. Exhibit J at pages 2-3; Morin at pages 52-53, Klincewicz at pages 40-44; 80; 104-05.

22. The Guidelines and Hospital practice encourage a case-by-case assessment of an attendance problem. The Guidelines do not limit attendance analysis to a "numbers game." Klincewicz routinely took into consideration special occasions such as sickness or child care problems in deciding how to treat unscheduled absences of employees. Supervisors had the discretion to re-issue a particular corrective action step rather than moving to the next serious step. Exhibit J; Klincewicz at pages 40-44; 80; 104-105; Morin at 33-35; Viscomi at 38-39.

23. The Hospital decision makers analyze each attendance problem individually, and do not compare employee records. Viscomi at 48-66; Morin at 24-26.

Hospital's Treatment of Similarly Situated People

Universe of Transporter Employees

24. Viscomi was hired by the Hospital as Manager of Patient Transport in July, 2000. Exhibit A at Response 11.

25. Klincewicz worked in the Transport Department for the Hospital for eleven years, gradually working his way up before he was promoted by Viscomi to Supervisor in October, 2001. Klincewicz met with Viscomi in weekly supervisor

meetings in 2001-2002, where improving Department attendance was a frequent agenda item. Klincewicz at pages 6-8; 58-59; Viscomi at pages 9-10; 48-49.

26. In 2001-2002 at the time of Plaintiff's discipline and termination, the Transport Department employed approximately one hundred eight (108) patient transporters. Of these 108 transporters, sixteen (16) were white, fifty-six (56) were black, thirty-four (34) were Hispanic, and two (2) were Asian-Pacific Islander. Chart produced by Hospital in Response to Plaintiff's Interrogatory 11, Exhibit M hereto.

27. Of these 108 transporter employees, sixty-eight (68) were hired between the time Viscomi became Manager, and the end of 2002. Of these 68 transporters hired on Viscomi's watch, thirty-two (32) were black. Exhibit M.

Transporters Terminated for Attendance Issues

28. Of the 108 total transport employees, fourteen (14) were terminated for attendance issues between July 2000 and December 2002. Of the 14 employees terminated for attendance issues while Viscomi was manager, four (4) were white, three (3) were Hispanic, and seven (7) were black. Exhibit A at Response 11.

White Transporters With Attendance Issues Not Terminated

29. In addition to the four white transporters terminated for attendance issues, Plaintiff identified in discovery five other white employees who he believed experienced attendance problems comparable to his own during 2000-2002, but were not terminated: Mr. Morruzzi; Mr. Petruzzelli; Mr. Timmins; Ms. Cocovillo; and Ms. Forsythe. Exhibit G, at Answer Nos. 1 and 6.

30. Ms. Forsythe had minor absences which were corrected. Ms.

7

Cocovillo worked for the Hospital for only slightly more than a year. Her attendance deteriorated after she experienced an on-the-job injury in September, 2001, and then notified the Hospital she was planning to join the army. Klincewicz did not move forward to a written warning with Ms. Cocovillo because he knew she was leaving. Klincewicz at pages 88-93.

31.    Mr. Petruzzelli had documented medical conditions which allegedly interfered with his attendance, and he was therefore accommodated over time by the Hospital. Klincewicz at pages 85-87. Mr. Timmins received a reissued Final Written Warning, because he accepted his attendance problem, showed signs of improvement, and ultimately improved significantly. Klincewicz at 95-99. Mr. Morruzzi's attendance problem in 2001-2002 admittedly was not caught quickly enough by Klincewicz. Mr. Morruzzi received a Final Written Warning in September, 2001 from Klincewicz's predecessor Louis, but then Mr. Morruzzi's "rolling year" began anew before Klincewicz proceeded with more discipline. Mr. Morruzzi's attendance has improved in response to verbal warnings; however he currently works for the Hospital on a part-time basis only. Klincewicz at pages 80-84; Morin at pages 53-57; Viscomi at pages 67-71.

32.    The Department conducted no analysis of attendance discipline based on race; no comparison was made of any one employee's attendance record with any other employee's attendance record. The Hospital relied on the case-by-case consultation process and the Guidelines to ensure consistent application of attendance discipline in the Department. Viscomi at pages 12-14, 29, 49-50, 55-63; Morin at pages 24-28, 40, 56-58, 63; Klincewicz at pages 28-31.

33.    None of the three Hospital officials who agreed on the appropriateness

of Plaintiff's termination has ever been accused of racial discrimination by any other Hospital employee. Viscomi at page 8; Morin at pages 58-61.

PARTNERS HEATHCARE SYSTEM, INC.,
THE GENERAL HOSPITAL CORPORATION, d/b/a
MASSACHUSETTS GENERAL HOSPITAL
By their attorneys,

/s/ Christine M. Roach
Christine M. Roach – BBO No. 421630
ROACH & CARPENTER, P.C.
24 School Street
Boston, MA 02108
(617) 720-1800

DATED: November 12, 2004

## CERTIFICATE OF SERVICE

I, Christine M. Roach, hereby certify that I have served the above pleading on the opposing party by this day hand delivering a copy of same to counsel of record.

DATED: November 12, 2004

9