UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOCELYN GEORGES,<br>　　　Plaintiff, | )<br>)<br>) |
| v. | ) DOCKET NO. 03-12553-REK |
| | ) |
| PARTNERS HEALTHCARE SYSTEM, INC.,<br>A/K/A<br>MASSACHUSETTS GENERAL HOSPITAL,<br>　　　Defendant. | )<br>)<br>)<br>)<br>) |

**JOINT PRE-TRIAL MEMORANDUM**

1. **Concise Summary of the Evidence:**

    A. **Plaintiff:**

    The plaintiff worked at Massachusetts General Hospital ("the hospital") in the Patient Transport Department at the time he was terminated for alleged poor attendance. Three hospital officials participated in the decision to terminate the plaintiff, all of whom were white. The plaintiff is black, came to this country from Haiti and is presently a United States citizen.

    Essentially, the plaintiff claims that his supervisor, Krzysztof Klincewicz, and Klincewicz's manager, Alphonso Bruno, treated similarly situated white persons better than black employees. At trial the plaintiff will demonstrate that employees such as John Morruzzi, Anthony Petruzzelli, William Timmins, Arthur Joyce and Michael Bird all had worse attendance records than the plaintiff and were treated more leniently. The plaintiff claims damages for lost wages, emotional distress and attorney's fees.

-2-

**B.     Defendant:**

Plaintiff was terminated in September, 2002 for failure to comply with his Department's attendance requirements. Three Hospital officials participated in the decision to terminate Plaintiff: Alfonso (Bruno) Viscomi, Manager of Patient Transport, Equipment and Materials Services ("Viscomi"); Krzysztof Klincewicz, Supervisor of Materials Management, Patient Transport Branch ("Klincewicz"); and Anne Morin, Human Resources Generalist ("Morin"). Plaintiff grieved his termination through an independent Hospital process, and the termination was upheld by that process. Plaintiff has not identified any black transporter other than himself who he believes was treated less favorably by the Hospital than white employees. In 2001-2002 at the time of Plaintiff's discipline and termination, the Transport Department employed approximately one hundred eight (108) patient transporters. Of these 108 transporters, sixteen (16) were white, fifty-six (56) were black, thirty-four (34) were Hispanic, and two (2) were Asian-Pacific Islander.

Prior to being terminated, Plaintiff received both oral and written progressive discipline (a/k/a "corrective action") from his Supervisor Klincewicz – as well as Klincewicz's predecessor, McHurley Louis, who is black -- for his attendance problems in 2001 and 2002, consistent with Hospital practice with respect to unscheduled absences. Also consistent with practice, Klincewicz consulted with Human Resources at the Hospital before issuing the Written Warning and Final Written Warning to Plaintiff.

Plaintiff believed the progressive discipline he was receiving for his attendance was wrong and unfair. Despite the Guidelines of his Department, Plaintiff believed if he called in before his shift began to tell his supervisor he would not show up for work, his absence was excused, and it would not be counted against him for purposes of discipline. Plaintiff expressed this mistaken belief about attendance policy numerous times to his supervisors in the course of progressive discipline. Despite their attempts to instruct him properly in the attendance Guidelines, Plaintiff refused to

accept the meaning of the Guidelines and refused to accept his written warnings. Hospital officials ultimately concluded corrective action was failing in Plaintiff's case, because he was not correcting his attendance behavior despite the written warnings issued to him.

The Department's attendance Guidelines provide for supervisor discretion as to which unscheduled attendance incidents are charged against an employee, that is, which absences or tardiness will "count" for purposes of progressive discipline. For example, absences caused by a later-documented medical condition might be excused. The Guidelines and Hospital practice encourage a case-by-case assessment of an attendance problem, and do not limit attendance analysis to a "numbers game." The Hospital relied on this case-by-case consultation process, and the Guidelines, to ensure consistent application of attendance discipline in the Department.

2.  **Facts Established by Pleadings or by Stipulation or Admission of Counsel:**

   A.  **Plaintiff:**

The plaintiff began working at the hospital in June 1997 and transferred into the Patient Transport in October 1998. The plaintiff was terminated from the hospital for alleged poor attendance on September 24, 2002.

Three hospital officials participated in the decision to terminate the plaintiff, Alphonso Bruno Viscomi (Manager of Patient Transport Equipment and Material Services), Krzysztof Klincewicz (Supervisor of Materials Management Patient Transport Branch) and Anne Morin (Human Resource Generalist).

The plaintiff is black and came to this country from Haiti.

   B.  **Defendant:**

   1.   Plaintiff grieved his termination through a Hospital process, and the termination was upheld by that process.

2. The Hospital's general policy on attendance is that attendance is important, and that problem attendance may be addressed through the corrective action process. Each department is encouraged to create its own attendance guidelines.

3. Written Department Guidelines applicable in 2001 and 2002 (and first distributed to all Materials Management employees in September, 1998) provided that a "written warning may occur with 6-8 absences (+2-3 absences)" and that a "written warning may occur with 6-12 times late (+2-3 lates)." The Guidelines also provided that "final written warning may occur with 7-9 absences (+2-3 absences)" and "final written warning may occur with 7-13 times late (+2-3 lates)." The timeframes in the Guidelines encompass a rolling year.

4. Plaintiff believed the progressive discipline he was receiving for his attendance was wrong and unfair. Despite the Guidelines of his Department, Plaintiff believed if he called in before his shift began to tell his supervisor he would not show up for work, his absence was excused, and it would not be counted against him for purposes of discipline. Plaintiff believed this because he said he had been told so in his Hospital orientation before he came to work in Patient Transport.

5. It was not Viscomi's idea to terminate Plaintiff, and Viscomi did not make the decision alone. Klincewicz told Viscomi Plaintiff had sustained sufficient attendance problems to be terminated. At Viscomi's request, Klincewicz consulted Morin about the best course to pursue with Plaintiff – both with respect to the Final Written Warning and the possible termination. All three officials ultimately concurred in the decision to terminate Plaintiff.

6. Consistent with his usual practice, Viscomi did not personally examine the documentation with respect to Plaintiff's attendance record. Instead, Viscomi relied on his supervisors, in this case Klincewicz, to administer attendance records and policy in accordance with the Guidelines and Human Resources consultation.

7.  The Guidelines provide for supervisor discretion as to which unscheduled attendance incidents will be charged against the employee. The Guidelines and Hospital practice encourage a case-by-case assessment of an attendance problem. The Guidelines do not limit attendance analysis to a "numbers game." The Hospital decision makers analyze each attendance problem individually, and do not compare employee records.

8.  In 2001-2002 at the time of Plaintiff's discipline and termination, the Transport Department employed approximately one hundred eight (108) patient transporters. Of these 108 transporters, sixteen (16) were white, fifty-six (56) were black, thirty-four (34) were Hispanic, and two (2) were Asian-Pacific Islander.

9.  Of these 108 transporter employees, sixty-eight (68) were hired between the time Viscomi became Manager, and the end of 2002. Of these 68 transporters hired on Viscomi's watch, thirty-two (32) were black.

10. Of the 108 total transport employees, fourteen (14) were terminated for attendance issues between July 2000 and December 2002. Of the 14 employees terminated for attendance issues while Viscomi was manager, four (4) were white, three (3) were Hispanic, and seven (7) were black.

11. The Department conducted no analysis of attendance discipline based on race; no comparison was made of any one employee's attendance record with any other employee's attendance record. The Hospital relied on the case-by-case consultation process and the Guidelines to ensure consistent application of attendance discipline in the Department.

**3.   Contested Issues of Fact:**

**A.   Plaintiff:**

Whether or not the plaintiff was treated less favorably than other white employees who were disciplined for absenteeism.

**B.   Defendant:**

Whether there exists any probative evidence upon which a reasonable fact finder could conclude that any Hospital official intentionally discriminated against Plaintiff based on his race.

**4.   Jurisdictional questions:**

**A.   Plaintiff:**

None.

**B.   Defendant:**

None.

**5.   Questions Raised by Pending Motions:**

Defendant's Motion for Summary Judgment pending.

**6.   Issues of Law:**

**A.   Plaintiff:**

Whether discriminatory enforcement of a lawful policy is unlawful if employee can demonstrate that the despite the fact that he was discharged for misconduct his employer treated him differently than other similarly situated employees not within the protected class who were also engaged in the prohibitive conduct. *See, Anderson v. Savage Lab, Inc.*, 675 F. 2d, 1221, 1224-25, (11th Circuit, 1982); *Flynn v. Raytheon Company*, Mass. 1994, 868 F. Supp. 383; *Petsch-Schmid v. Boston Edison Co.*, 1914 F. Supp. 697 (Mass. 1996).

**B.   Defendant:**

1.   Whether Plaintiff was similarly situated to any white employee for purposes of enforcement of the Hospital's attendance policy. *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 43-44 (comparators must be similarly situated in all relevant respects); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)(for purposes of comparison in discrimination law, cases must be fair congeners; "apples should be compared to apples");

2. Whether Plaintiff has established a prima facie case of race discrimination. *Straughn v. Delta Air Lines, Inc*, 250 F.3d 23, 33 (1st Cir. 2001);

3. Whether the Hospital has introduced evidence of a legitimate business reason for the employment action. *Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44-45 (1st Cir. 2002); and

4. Whether Plaintiff has produced sufficient evidence that the Hospital's articulated reason for his termination is not the real reason, and that he was actually terminated because he is black. *Estades-Negroni v. The Associates Corporation of North America*, __ F.3d __, 2003 WL 22244952, *4 (1st Cir. 2003); *Zapata-Matos*, 277 F.3d at 45; *McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals*, 140 F.3d 288, 303 (1st Cir. 1998).

**7. Any Requested Amendments to the Pleadings:**

The Hospital respectfully requests that Plaintiff dismiss from his Complaint, Paragraph 4, the claim that he is African-American, and the claim that the Hospital treated African-Americans differently.

**8. Any Additional Matters to Aid in the Disposition of the Action:**

A. Ruling on Defendant's Motion for Summary Judgment.

B. Ruling on Motions in Limine with respect to issues raised in Defendant's Motion to Strike, as well as with respect to which, if any, white employees were similarly situated to Plaintiff as comparators under Title VII.

**9. Probable Length of Trial:**

Plaintiff estimate: 3 days.

Defendant estimate: 1 day

10. **Name of Witnesses to be Called:**

   **A.    Plaintiff:**

   Jocelyn Georges

   Krzystof Klincewicz

   Alphonso Viscomi

   Anne Morin

   John Morruzzi

   Anthony Petruzzelli

   William Timmins

   Arthur Joyce

   Michael Bird

   **B.    Defendant:**

   Jocelyn Georges

   Krzystof Klincewicz

   Alphonso Viscomi

   Anne Morin

11. **Proposed Exhibits:**

   **A.    Plaintiff:**

   1.    Plaintiff's Exhibit 9 in deposition of K. Klincewicz, Bate Stamp 000668, Corrective Action Notice to John Morruzzi, 9/6/01;

   2.    Plaintiff's Exhibit 10 in deposition of K. Klincewicz, Bate Stamp 000777, Attendance Record of John Morruzzi, fiscal year 2003;

3. Plaintiff's Exhibit 12 in deposition of K. Klincewicz, Bate Stamp 000781, Attendance Record of Anthony Petruzzelli, fiscal year 2000;

4. Document Bate Stamp 000782, Attendance Record of Anthony Petruzzelli, year 2001;

5. Document Bate Stamp 000783, Attendance Record of Anthony Petruzzelli, year 2002;

6. Document Bate Stamp 000784, Attendance Record of Anthony Petruzzelli, year 2003;

7. Plaintiff's Exhibit 13 in deposition of K. Klincewicz, Bate Stamp 000772, Attendance Record of Arthur Joyce, fiscal year 2000;

8. Plaintiff's Exhibit 13 in deposition of K. Klincewicz, Bate Stamp 000773, Attendance Record of Arthur Joyce, fiscal year 2001;

9. Document Bate Stamp 000604, Evaluation Form of Michael Bird;

10. Plaintiff's Exhibit 6 in deposition of K. Klincewicz, Corrective Action Notice to Jocelyn Georges, no date;

11. Plaintiff's Exhibit 7 in deposition of K. Klincewicz, Corrective Action Notice to Jocelyn Georges, dated 7/10/02.;

12. Plaintiff's Exhibit 3 in deposition of K. Klincewicz, Attendance Guidelines, 9/1/98;

13. Document Bate Stamp 00077-00079, Attendance Guidelines, Revised Jan. 2003;

14. Plaintiff's Complaint filed with U. S. Equal Employment Opportunity Commission on or about 7/3/03;

15. Right to Sue Letter issued on 9/19/03 by EEOC;

**B.   Defendant:**

1. Termination Letter dated September 24, 2002;

2. Decision of Grievance Review Committee dated November 5, 2002;

3. Written Warning dated January 11, 2002;

4. Final Written Warning dated July 11, 2002;

5. Performance Tracking Sheet and Daily Attendance records for Plaintiff;

6. Three-page chart of employees, Transport Department;

7. Attendance Guidelines, Materials Management, September 1, 1998.

**12. Objections to Proposed Evidence:**

As set out in the Hospital's Motion to Strike, the Hospital objects to the admissibility of the following:

1. 2003 Attendance Guidelines issued after Plaintiff was terminated;

2. The attendance records of white employees not similarly situated to Plaintiff as a matter of law; and

3. Statements by Plaintiff of his beliefs with respect to matters about which he has no personal knowledge or is otherwise not competent to testify.

| PLAINTIFF | DEFENDANT |
|---|---|
| By his attorney, | By its attorney, |
| *[signature]* | *[signature]* |
| John D. Corrigan/BBO No. 100460 | Christine M. Roach/BBO No. 421630 |
| O'MALLEY AND HARVEY, LLP | ROACH & CARPENTER, P.C. |
| Two Oliver Street, 9th Floor | 24 School Street |
| Boston, MA 02109-4908 | Boston, MA 02108 |
| TEL: 617-357-5544 | TEL: 617-720-1800 |
| FAX: 617-204-3477 | FAX: 617-720-0720 |