UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOCELYN GEORGES,<br>    Plaintiff<br><br>    v.<br><br>PARTNERS HEALTHCARE SYSTEM, INC.,<br>A/K/A<br>MASSACHUSETTS GENERAL HOSPITAL,<br>    Defendants | CIVIL ACTION<br>NO. 03-12553-REK |

**Memorandum and Order**
January 4, 2005

**I. Pending Matters**

Currently pending before this court are matters related to the following filings:

(1) Defendants' Motion for Summary Judgment (Docket No. 8) (filed November 12, 2004);

(2) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (Docket No. 9) (filed November 12, 2004);

(3) Defendants' L.R.D.Mass. 56.1 Statement of Undisputed Facts (Docket No. 10) (filed November 12, 2004);

(4) Plaintiff Jocelyn Georges' Opposition to Defendant's Motion for Summary Judgment (Docket No. 12) (filed December 10, 2004);

(5) Parties' Assented-to Motion Pursuant to Confidentiality Agreement to Place Certain Documents Under Seal (Docket No. 13) (filed December 10, 2004);

(6) Plaintiff Jocelyn Georges' Memorandum in Support of His Opposition to Defendant's Motion for Summary Judgment (Docket No. 14) (filed December 10, 2004);

(7) Plaintiff's L.R.D.Mass. 56.1 Response to Defendant's Statement of Undisputed Facts (Docket No. 15) (filed December 10, 2004); and

(8) Defendants' Motion to Strike Portions of the Material Appended to Plaintiff's Memorandum in Support of His Opposition to Defendants' Motion for Summary Judgment (Docket No. 16) (filed December 14, 2004).

## II. Procedural Background

This case was filed by the plaintiff on December 18, 2003. (Docket No. 1) The plaintiff alleges that he was discriminated against by the defendants based on his race when he was fired from his job as a patient transporter by employees of the defendants. The defendants have filed a motion for summary judgment. (Docket No. 8) The plaintiff has filed an opposition to the defendants' motion. (Docket No. 12)

## III. Standard of Review

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. See Fed. R. Civ. P. 56. The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record showing the absence of a genuine dispute of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). A factual question is material if a reasonable jury could return a verdict for the non-

2

moving party based at least in part on the jury's determination of the factual question. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether summary judgment should be granted, a court reads the record, and all reasonable inferences to be drawn from the record, in the light most favorable to the nonmoving party. Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1159 (1st Cir. 1994).

### IV. Facts

Massachusetts District Court Local Rule 56.1 requires a statement of undisputed facts to be filed by the movant with the motion for summary judgment. The defendants have filed a statement of undisputed facts. The local rule also requires that a party opposing summary judgment file a statement of disputed facts. Both of these statements are to cite relevant parts of the factual record. The plaintiff's filing titled "Plaintiff's L.R.D.Mass. 56.1 Response to Defendant's Statement of Undisputed Facts" is deficient in that it makes general declarations of admission or denial and does not cite to relevant parts of the factual record. The plaintiff's filing titled "Plaintiff Jocelyn Georges' Memorandum in Support of His Opposition to Defendant's Motion for Summary Judgment," however, does contain a fact section that cites to allegedly relevant parts of the record.

My goal as a judge is to see that cases are judged on the merits as promptly as is feasible. Although the terms of the local rule were not exactly complied with, I will treat the combination of plaintiff's filings as in compliance.

Proceeding in this way, I determine that the facts viewed most favorably to the plaintiff are as follows:

The plaintiff began working at Massachusetts General Hospital ("the Hospital") around June 1997. The plaintiff was transferred into the Patient Transport Department ("the Department") in October 1998. The plaintiff's employment was terminated on September 24, 2002, allegedly for poor attendance. The plaintiff grieved his termination through a process established by the Hospital, and the termination was upheld.

Three officials of the Hospital participated in the decision to terminate the plaintiff: Alfonso (Bruno) Viscomi, Manager of Patient Transport, Equipment and Materials Services; Krzystof Klincewicz, Supervisor of Materials Management, Patient Transport Branch; and Anne Morin, Human Resources Generalist. Viscomi was hired by the Hospital as Manager of the Department in July 2000. Klincewicz worked in the Department for the Hospital for eleven years. He was promoted by Viscomi to the position of Supervisor in October 2001. All three of the individuals involved in the decision to terminate the plaintiff are white.

From 2001-2002, the Department employed approximately one hundred eight patient transporters. Sixteen of the transporters were white, fifty-six were black, thirty-four were Hispanic, and two were Asian/Pacific Islander. Of these 108 employees, sixty-eight were hired between the time Viscomi became Manager and the end of 2002. Thirty-two of these hirees were black. Following the plaintiff's termination from the Department, other individuals were hired. The first person hired by the Patient Transport Department following the plaintiff's dismissal was an Asian/Pacific Islander. Also hired as transporters before the end of 2002 were two blacks and three Hispanics.

Fourteen employees were terminated because of attendance issues between July 2000 and December 2002 while Viscomi was manager. Of these employees, four were white, three were Hispanic, and seven were black.

The Hospital's policy on attendance is that it is important and that it can be addressed through corrective action. Klincewicz and Viscomi met in weekly supervisor meetings during 2001 and 2002, and improving Department attendance was a frequent agenda item. Written Department Guidelines ("Guidelines") existed, outlining the policy concerning absences within the Department. Those Guidelines indicate that a "[w]ritten warning may occur with 6-8 absences (+2-3 absences)[;]" a "[f]inal written warning may occur with 7-9 absences (+2-3 absences)[;]" and that "termination may occur with 8 or more absences[.]"

The Guidelines provide the supervisor with discretion in deciding which unscheduled attendances will count against the employee for purposes of the progressive discipline outlined in the Guidelines. Absences that result from a documented medical condition may be excused under the discretion provided by the Guidelines. In addition, employees experiencing problems with their attendance were encouraged to consult with their supervisors, Human Resources, or the Employee Assistance Program for guidance. The Guidelines allowed for reissuance of a particular corrective action step instead of moving up to the next step. The individuals charged with making the decisions about attendance issues analyze each attendance problem individually and do not compare employee records.

The Guidelines were changed in 2003. The corrective action steps were altered to remove the range of absences or lates at which corrective action occurred and replace them with a definite number. For example, under the new Guidelines a written warning may occur with 6

5

absences, as opposed to 6 to 8 absences under the old Guidelines. This change allowed for more consistency in the application of the Guidelines.

Before the plaintiff was terminated, the plaintiff's record indicated that he was absent 13 times and late 14 times. Viscomi did not personally examine the plaintiff's attendance record, which is consistent with his usual practice. Viscomi relied on his supervisors to administer attendance records and policy in accordance with the Guidelines and Human Resources consultation.

In at least one instance the plaintiff was orally confronted about attendance problems by Klincewicz. The plaintiff indicates that at the end of the meeting, Klincewicz threw away a letter that was addressed to the plaintiff. The plaintiff believed that the discipline he was receiving for his attendance was wrong and unfair. The plaintiff believed that if he called in before his shift began, to tell his supervisor he would not show up for work, his absence was excused and it would not be counted against him for purposes of discipline. The plaintiff indicated that he believed this because he had been told so during his Hospital orientation before he came to work in Patient Transport. The plaintiff has failed to show, however, that his belief was correct.

The plaintiff, a Haitian and a black person, claims to have been treated less favorably than certain identified white employees who had worse attendance records. Those individuals include some who still work for the Hospital: J.M. was tardy 40 times in 2000 and was absent on 17 occasions; A.P. was absent 21 times in 2000 and received only a verbal warning, was absent 9 times in 2001, and was absent 20 times in 2003; and W.T. was absent 5 times and tardy 26 times in 2000, absent 8 times and tardy 11 times in 2001, and was absent 9 times and tardy 7 times in 2002. Other individuals, who were allegedly treated more leniently, were fired by the

Hospital. A.J. was absent 28 times in 2000 and 47 times in 2001 but worked for the Hospital into the year 2002. M.B., who was still working for the Hospital when the plaintiff was fired, received an evaluation indicating that he had a poor attendance record, had used over 30 days of "unscheduled ET," and was tardy "on many occasions."

The defendants attempt to distinguish the situations associated with their treatment of the identified white individuals.

A.P. had documented medical conditions that allegedly interfered with his attendance. The Hospital attempted to accommodate A.P.'s condition.

W.T. was not treated as harshly because he accepted his attendance problem, showed signs of improvement, and ultimately improved significantly.

The defendants admit that J.M.'s attendance problems should have been addressed more quickly. Part of the issue was that attendance was judged on a rolling basis. J.M. also currently works only part time.

The Department conducted no analysis of attendance discipline based on race and made no comparison of any one employee's attendance record with any other employee's record. The Hospital relied on a case-by-case consultation process, and the Guidelines, to ensure consistent application of attendance discipline in the Department. No evidence appears in the record before the court that any of the three Hospital officials who were involved in the decision to terminate the plaintiff have ever been accused of racial discrimination by any other Hospital employee.

**V. Analysis**

**A. Motion to Strike**

The defendants present a motion to strike certain parts of the evidentiary record including specific paragraphs of the affidavit of the plaintiff. In the hearing held on December 16, 2004, plaintiff's counsel indicated that the disputed portions of the plaintiff's affidavit were not necessary to the motion for summary judgment. Therefore, I will disregard those portions as I proceed to consider the pending motion for summary judgment. In light of this ruling, the defendants' motion to strike is moot.

The defendants also dispute the admissibility of the 2003 Guidelines and certain employee records, but I decline to strike the references to these documents, because including those items in the record I consider does not affect the outcome of the case.

**B. Defendants' Motion for Summary Judgment**

**1. Legal Standard**

The defendants argue that, because the "[p]laintiff presents no direct evidence of race discrimination," the facts of this case must be judged under the burden shifting rubric of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The plaintiff does not challenge this assertion.

Traditionally, employment discrimination claims have been divided into two types. In cases where a plaintiff had "direct evidence" of discrimination, a defendant would then have the burden to prove that it would have taken the same action even without the discriminatory animus. See Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 64 (1st Cir. 2002). If the defendant can make the required showing, "the employer may then avoid liability for monetary

damages and reinstatement." Id. (citing Civil Rights Act of 1991, Pub.L. No. 102-166, § 107, 105 Stat. 1071, 1075-76 (1991), *codified at* 42 U.S.C. §2000e-5(g)(2)(B)). The defendant, however, could still be liable for "declaratory and limited injunctive relief, as well as attorneys' fees." Id.

In cases where the plaintiff does not have direct evidence and has only circumstantial evidence of discrimination a test developed in McDonnell Douglas Corp. is applied.

> In employment discrimination cases, the plaintiff must make a prima facie ... showing that: (1)[the employee] is a member of a protected class; (2)[the] employer took an adverse employment action against [her]; (3)[the employee] was qualified for the employment [the employee] held; and (4)[the employee's] position remained open or was filled by a person whose qualifications were similar to [the employee's qualifications].

Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) (citations and quotation omitted). If the plaintiff can make this showing, the employer must then provide a non-discriminatory reason for the employment action. Id. at 34. See also Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 39 (1st Cir. 2003) (citing Bishop v. Bell Atl. Corp., 299 F.3d 53, 58 (1st Cir. 2002). In contrast with proceeding under the mixed motive model, however, an employer defendant need only produce admissible evidence of a nondiscriminatory reason as opposed to bearing the affirmative burden of proving it would have acted the same but for the improper motive. Weston-Smith, 282 F.3d at 65 (citing Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996)). Finally, if a defendant can provide the required admissible evidence, the burden shifts back to the plaintiff to prove that he or she was the victim of intentional

9

discrimination. Straughn, 250 F.3d at 34 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). See also Che, 342 F.3d at 39 (citing Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)). "Evidence that the employer's stated reasons are pretextual can be sufficient for a jury to infer discriminatory animus." Che at 39 (citing Gonzales v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002)).

It is at least arguable that the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), has changed the traditional way of adjudicating employment discrimination cases. Under Desert Palace, "direct evidence" of discrimination is not required in mixed motive cases. 539 U.S. at 101-102.

A brief Westlaw search turned up only five cases in which the First Circuit has mentioned Desert Palace, and none of them decides whether the McDonnell Douglas burden shifting rubric is affected by Desert Palace. The closest the First Circuit comes to directly addressing the issue is in Hillstrom v. Best Western TLC Hotel, 354 F.3d 27 (1st Cir. 2003). In that case, the court did not rule on the issue because the plaintiff likely had not preserved the issue for appeal and because it would not have made a difference which method was applied in that case. Id. at 31. The Court of Appeals for the First Circuit intimated in dicta, however, that McDonnell Douglas likely survived Desert Palace. It noted that the Supreme Court had applied the McDonnell Douglas burden shifting analysis post-Desert Palace. Id. at 31 n.1. Thus, the effect of Desert Palace is still an open question.

Of course, if a court can avoid pronouncements of law on complicated issues, it should do so. Hillstrom did not have to deal with the effect of Desert Palace, in part, because both under the mixed-motive and the burden shifting methods a plaintiff would have to "present

enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias" and the plaintiff in Hillstrom could not do so. 354 F.3d at 31. Because the evidence produced by the plaintiff in this case is insufficient to establish "that the adverse employment decision was caused at least in part by a forbidden type of bias," I will follow the lead of the First Circuit and forego an analysis of how Desert Palace affects the burden of proof in Title VII employment discrimination cases.

### 2. Lack of Forbidden Bias

Because the evidence provided by the plaintiff is not enough for a jury reasonably to find that racial animus existed, I will grant the defendants' motion to dismiss. The plaintiff's case hinges on whether he can show that the allegedly differential treatment of five white employees is sufficient to create an inference upon which a jury reasonably could find that the defendants acted with a forbidden animus.

The first hurdle the plaintiff has to surmount is demonstrating that the individuals were similarly situated to the plaintiff. The plaintiff cannot show that all of the individuals he relies upon are similarly situated. A.P. is not similarly situated because of the medical condition that affected his attendance record. Also, W.T. is distinguishable from the plaintiff. The defendants have explained that W.T. accepted his attendance problem and made improvement. No evidence is before me indicating that the plaintiff accepted his attendance problem and made improvement.

Even assuming that the three remaining individuals were similarly situated, I note that two of them, A.J. and M.B., were later fired. Therefore, the degree of support these instances provide to the plaintiff's case is minimal at best.

That leaves J.M., and his case does not add enough to the plaintiff's case to allow a jury reasonably to infer racial animus. The defendants have admitted that J.M.'s supervisor was remiss in enforcing the Guidelines as to this individual. I am unable to rule, however, that a jury reasonably could find a racial animus existed in the decision to fire the plaintiff because one supervisor admittedly messed up in his oversight of one other employee and may have waited a bit long to fire two others.

Finally, the later reduction in supervisor discretion that occurred in the 2003 edition of the Guidelines does not change the fact that the plaintiff has simply failed to provide sufficient evidence to show racial animus. Even if a change in the Guidelines may support an inference that too much discretion was allowed previously, it does not support the argument that the change was made due to perceived racial discrimination in the enforcement of the previous Guidelines.

**C. Motion to Seal Certain Documents**

The parties have requested that certain documents be placed under seal. Because of the sensitive nature of the documents, I will grant the parties assented-to motion. Therefore, I will instruct the clerk to seal all of the documents associated with the summary judgment motion marked "CONFIDENTIAL."

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Defendants' Motion for Summary Judgment (Docket No. 8) is GRANTED.

(2) Parties' Assented-to Motion Pursuant to Confidentiality Agreement to Place Certain Documents Under Seal (Docket No. 13) is GRANTED.  The clerk is ordered to place all documents associated with the summary judgment motion marked "CONFIDENTIAL" under seal.

(3) Defendants' Motion to Strike Portions of the Material Appended to Plaintiff's Memorandum in Support of His Opposition to Defendants' Motion for Summary Judgment (Docket No. 16) is DENIED as moot.

(4) The clerk is directed to enter forthwith on a separate document a Final Judgment as follows: Judgment for the Defendants, Partners Healthcare System, Inc. and Massachusetts General Hospital, and against the plaintiff, Jocelyn Georges.  In the circumstances of this case, I find that the lack of prompt and clear notification of plaintiff regarding the appropriately differing treatment of different employees makes it appropriate to order, and I hereby do order, that each party bear its own costs.

      /s/Robert E. Keeton
      Robert E. Keeton
      Senior United States District Judge